UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGREL MAURICE WASHINGTON, an Individual,<br><br>Plaintiff,<br>v.<br><br>TARGET CORPORATION, a Minnesota Corporation; and DOES 1 through 50, inclusive,<br><br>Defendants | Case No.: 5:23-cv-01161-MEMF-SHK<br><br>**ORDER DENYING MOTION FOR ORDER REMANDING ACTION TO STATE COURT [ECF NO. 20] AND GRANTING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE [ECF NO. 33]** |

Before the Court is Plaintiff Rogrel Washington's Motion for Order Remanding Action to State Court (ECF No. 20) and Defendant Target Corporation's Request for Judicial Notice (ECF No. 33). For the reasons stated herein, the Court hereby DENIES Plaintiff's Motion for Order Remanding Action to State Court and GRANTS Defendant's Request for Judicial Notice.

/ / /

/ / /

I. **Background**

A. **Factual Background**[1]

Plaintiff Rogrel Washington ("Washington") brings the instant suit against Defendant Target Corporation ("Target"). Washington was hired as a warehouse worker by Target on August 4, 2021. Compl. ¶¶ 9, 10. On August 21, 2021, Washington was hospitalized due to a mental disability. Compl. ¶ 11. The following day, Washington informed Target that she was being hospitalized, after which she was placed on a twenty-four-hour medical hold. Compl. ¶ 12. During the hold, Washington was unable to leave the hospital or make calls. *Id.* Washington was discharged from the hospital on August 23, 2023, and instantly informed Target of the discharge. Compl. ¶ 13. Target told Washington to bring her discharge reports on her next scheduled workday, which was August 28, 2021. *Id.* Washington informed Target that her medications required continuous trips to the restroom, and continued to work for Target from August 28, 2021 until September 5, 2021. Compl. ¶ 14. On September 6, 2021, Target's Human Resources department informed Washington that she was being terminated for missing work during the period she was hospitalized. Compl. ¶ 15. When Washington reminded Target that she provided Target with her medical documents confirming that she was hospitalized, Target told Washington that it was "too late." Compl. ¶ 16.

B. **Procedural History**

On April 19, 2023, Washington filed the instant suit against Target in San Bernardino County Superior Court. *See generally* Compl. Washington brought six causes of action: (1) disability discrimination; (2) failure to provide reasonable accommodation; (3) failure to engage in a good faith interactive process; (4) retaliation in violation of California Government Code section 12900; (5) wrongful termination; and (6) wrongful termination in violation of public policy. *Id.* Washington asserts that she is entitled to protection under California Department Fair Employment and Housing Act under Government Code section 12900, *et seq.* ("FEHA") and California common law. Compl. ¶ 2. Target filed an Answer on June 15, 2023. ECF No.1-6. On June 16, 2023, Target removed the

---

[1] Unless otherwise indicated, the following factual background is derived from the Plaintiff Rogrel Maurice Washington's Complaint. *See* ECF No. 1-2, ("Complaint" or "Compl."). The Court includes these allegations only as background and makes no finding on whether they are true.

action to this Court. *See* ECF No. 1 ("Notice of Removal" or "NOR"). Target based its removal on diversity of citizenship, noting that it is incorporated in Minnesota and alleging that Washington, a citizen of California, seeks more than $75,000 in damages. *See* NOR at 3–4. Washington filed her Motion to Remand on July 14, 2023. ECF No. 20 ("Motion" or "Mot"). Target filed an Opposition to the Motion on September 28, 2023. ECF No. 32 ("Opposition" or "Opp'n"). Target also filed a Request for Judicial Notice requesting the Court to take judicial notice of eight exhibits in support of Target's Opposition. ECF No. 33 ("RJN"). On October 5, 2023, Washington filed a Reply in Support of the Motion and corresponding declaration from Ariella Mehrzadi. ECF Nos. 34 ("Reply"), 34-1 ("Mehrzadi Decl."). Washington also filed an Opposition to Target's Request for Judicial Notice. ECF No. 35 ("Opposition to RJN"). On October 16, 2023, Target filed Objections to and Request to Strike the Mehrzadi Declaration. ECF No. 36 ('Objection and Request to Strike"). The Motion was heard before the Court on November 11, 2023.

## **REQUEST FOR JUDICIAL NOTICE**

### I. **Applicable Law**

Federal Rule of Evidence 201(b) allows a court to take judicial notice of facts that are not subject to reasonable dispute because the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Adjudicative facts that may be judicially noticed include "*undisputed* matters of public record" which differs from "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Documents on file in federal and state court are undisputed matters of public record and therefore appropriate for judicial notice. *See Harris v. County of Orange*, 682 F.3d 1126, 1132–33 (9th Cir. 2012); *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).

### II. **Discussion**

Target requests that this Court judicially notice the first amended complaint, request for attorney's fees, and supplemental declaration of Washington's counsel of record's prior cases (Exhibits 1–4), as well as an order granting a plaintiff's motion for final approval, and complaints for

damages and special verdict forms in two other cases. RJN at 1–2. Target specifically asks the Court to take notice of these exhibits to evaluate the amount in controversy. *Id.* Target's Opposition cites these exhibits to calculate emotional damages and attorneys' fees. *See generally* Opposition. Washington opposes Target's request to judicially notice Exhibits 1–4. Opposition to RJN at 2.

The Court may take judicial notice of proceedings in another court if it has "a direct relation to the matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citations omitted). Washington argues that Target has failed to show these documents are authentic, but does not identify what else is needed to authenticate what appear to be legitimate court filings. And although Washington argues that the Court should not consider the information in these documents, it appears that Washington is merely arguing about the weight to be given to the hourly rates and attorneys' fees in other cases, not that the hourly rates and attorneys' fees in other cases cannot be relevant. The Court therefore finds that these exhibits are relevant. The Court may also properly take judicial notice of these exhibits under Federal Rule of Evidence 201, as these court records are not subject to reasonable dispute. Fed. R. Evid. 201. Accordingly, the Court GRANTS Target's Request and judicially notices the court records; the Court also judicially notices the other documents to which Washington has not raised an objection.

## MOTION FOR ORDER REMANDING ACTION TO STATE COURT

### I. Applicable Law

"Federal courts are courts of limited jurisdiction." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017). Removal of state action may be based on either federal question jurisdiction or diversity jurisdiction. *See* 28 U.S.C. § 1332; *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). When a plaintiff files an action in state court and valid bases for federal jurisdiction exists, the defendant may remove the action to federal court. *See* 28 U.S.C. § 1446. The party seeking removal of an action from state court bears the burden of establishing grounds for federal jurisdiction and there is a "strong presumption" against removal. *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010). A removed case must be remanded "[i]f at anytime before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

Target based its removal on diversity jurisdiction, and it is undisputed that diversity of citizenship exists. *See* NOR at 3-5; Opp'n at 1. Thus, the parties' dispute on remand only concerns whether the amount in controversy alleged exceeds the jurisdictional threshold.

Diversity jurisdiction requires "complete diversity of citizenship and an amount in controversy greater than $75,000. 28 U.S.C. § 1332(a). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). The amount in controversy is "simply an estimate of the total amount in dispute," not "a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). It may encompass all relief a court may grant on that complaint if the plaintiff prevails. *JPMorgan Chase & Co.,* 432 F.3d at 415. Thus, the amount in controversy may include punitive, compensatory, or other types of damages, and attorney's fees. *Id.* at 416 (citing *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648–49 (9th Cir. 2016)).

When a defendant's assertion of the amount in controversy is challenged and the complaint does not specify the total amount in controversy, both parties submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied. *Id*. (citing 28 U.S.C. § 1446(c)(2)(B)). "In assessing the amount in controversy, [courts] may consider allegations in the complaint and in the notice of removal, as well as summary-judgment-type evidence relevant to the amount in controversy." *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 415 (9th Cir. 2018) (citing *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005)). The removing defendant bears the burden of establishing that the amount in controversy exceeds the jurisdictional amount. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). "Conclusory allegations as to the amount in controversy are insufficient" to support removal. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003).

/ / /

/ / /

## II.     Discussion[2]

A plaintiff can contest a defendant's removal by mounting a "facial" or a "factual attack" on defendant's allegations. *Harris v. KM Indus., Inc.*, 98F.3d 694, 699 (9th Cir. 2020) (citing *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020)). Contesting the truth of the allegations themselves, Washington has mounted a factual attack on Target's allegations because she directly challenges Target's allegations. Mot. at 4 ("Defendant relies on baseless assumptions to meet the $75,000 jurisdictional minimum").

Washington argues that Target has not shown by a preponderance of evidence that the amount in controversy requirement has been met. Reply at 1. Specifically, Washington argues that Target makes baseless and exaggerated assumptions to meet the amount in controversy threshold and relies on "case law that is substantially different to the facts and claims at issue in the instant matter" for its calculation of emotional distress damages, punitive damages, and attorney's fees. Mot. at 4.

Target responds that the burden of proving by a preponderance of evidence that the amount in controversy exceeds $75,000 has been met. Opp'n at 5. More specifically, Target asserts that at least $120,156 in compensatory damages, $75,000 in emotional damages, $195,156 in punitive damages and $77,000 in attorney's fees are at stake in this litigation. Target's purported amount in controversy is based on Washington's employment application, Washington's complaint, and jury verdicts in other, allegedly similar disability discrimination cases. *Id.* at 7-8.

---

[2] Target alleges that Washington failed to comply with Local Rule 7-3 and this Court's Civil Standing Order. Opp'n at 2-3. From a review of the filings, it appears that there was substantial compliance with Local Rule 7-3 and this Court's Civil Standing Order because the parties conferred on July 11, 2023 regarding Washington's then-anticipated Motion. *See* Opp'n at 3; *see* Reply at 1-2.

Target objects to and moves to strike the Mehrzadi Declaration. Objection and Request to Strike. The Court finds that Washington's counsel properly raised the alleged facts in reply papers because they are responsive to what was filed in Target's Opposition. The remaining objections are OVERRULED.

The parties are implored to review the Court's Standing Order, as well as the Local Rules and the Federal Rules of Civil Procedure, and to follow them for the remainder of the action.

For the reasons explained below, the Court finds that Target has shown, by a preponderance of evidence, that past and future lost wages, punitive damages, and attorneys' fees would equal at least $57,860, $57,860, and $77,000, respectively. Target has thus met its burden of showing that the amount in controversy exceeds the jurisdictional threshold of $75,000.

### A. Target Has Not Shown Compensatory Damages Would Exceed $57,860

Washington seeks past and future lost wages. Compl., Prayer ¶ A, B. In its Notice of Removal, Target alleged that Washington earned $20.90 per hour for full-time work. NOR at 7. Target assumed that Washington worked for 40 hours per week. *Id.* Target further assumed that lost wages damages would be calculated for 144 weeks. *Id.* ("assuming that the trial takes place approximately one year from the date of this removal"). Thus, Target initially asserted that lost wages would equal at least $120,384. *Id.* In support of its calculation, Target cited a declaration by Adam Klarfeld, identified as the "Director, Employee Relations Counsel for Target Corporation," ECF 1-1 ("First Klarfeld Decl.") ¶ 1.[3] NOR at 7. With regards to Washington's employment at Target, the First Klarfeld Declaration merely stated that she was earning $20.90 per hour for full-time employment. *Id.* ¶ 3.

In her Motion, Washington noted that other than the declaration stating Washington's alleged hourly rate for full-time employment, Target did not provide any other evidentiary support. Mot. at 3. Washington also notes that the "data and records" of her earnings and other employment benefits are at Target's disposal, and yet, Target did not provide these in support of its Notice of Removal. Mot. at 7. Washington correctly noted that "based on the time records provided by Defendant [Target]," (ECF 20-2 ("Shirian Declaration" or "Shirain Decl."), Ex. A) Plaintiff did *not* typically work a forty-hour week. Mot. at 4. According to the Shirian Declaration (authored by Washington's counsel), Washington sought and received a copy of her time and payroll records from Target, Shirian Decl. ¶ 3, and based on those time and payroll records, Washington worked anywhere between 7.43 hours and 32.45 hours per week. Shirian Decl., Ex. A. Thus, according to Washington,

---

[3] Washington filed objections to the First Klarfeld Declaration. ECF 20-1. To the extent that these objections were meritorious, the Court finds that they have been cured by Target's subsequent filing of the Second Klarfeld Declaration.

1  Target did not—by way of the First Klarfeld Declaration—meet its burden of showing, by a
2  preponderance of evidence, that compensatory damages equal $120,000.
3        In its Opposition, Target relies on a different calculation to reach a $120,156 amount. Opp'n
4  at 6. Target alleges that Plaintiff worked for "33 hours per week [11 hours per shift, [accounting] for
5  meal breaks]", at a rate or $20.95 per hour plus a $2.00 per hour overnight shift differential. *Id.*
6  Target now asserts that there are 159 weeks of lost wages at issue.[4] *Id.* Thus, Target applies the
7  $22.90 per hour rate to thirty-hours for 159 weeks, reaching a $120,156 amount in lost wages. *Id.*
8  Target once again relies on a declaration by its "Director, Employee Relations Counsel" and
9  Washington's employment application. ECF 32-1 ("Second Klarfeld Decl."); Second Klarfeld Decl.,
10 Ex. 1. Furthermore, Target alleges that Washington's claim "to have worked no more than fifteen
11 hours per week, [] fails to acknowledge her own allegations in the Complaint that she was unable to
12 work numerous scheduled shifts due to her alleged disability." Opp'n 6. The language of the
13 Complaint, however, only supports the inference that Washington missed three workdays. Compl. ¶¶
14 12-14 (Washington was hospitalized on August 21, 2021, discharged on August 23, 2023, and her
15 next scheduled day to work was on August 28, 2021).
16       In her Reply, Washington argues that her work schedule fluctuates due to a myriad of factors
17 including but not limited to her availability, operational needs, and unforeseen circumstances. Reply
18 at 3. Washington also notes that the employment application predates her actual work history. *Id.*
19 Furthermore, Washington notes that Target's application of the $2.00 overnight shift differential is
20 incorrect. *Id.* A review of the pay and time record reveals that the differential does not apply to all
21 hours worked and that she does not work for thirty-three hours every week, corroborating
22 Washington's assertion. *Id.*; *see* Shirian Decl., Ex. A. Washington concedes that on average she
23 worked approximately 17.37 hours per week, but does not concede as to the time period at issue.
24 Reply at 3. Washington nonetheless notes that even considering the period alleged by Target—i.e.,
25 159 weeks—the $75,000 jurisdictional threshold is not met. *Id.* Lost wages for 159 weeks at a

---

[4] Target calculates the time period starting September 7, 2012 (the day after Target terminated Washington's employment), through trial, which is scheduled to begin on September 30, 2024. Opp'n at 6; *see* ECF 30 at 3.

8

$20.95 per hour rate for 17.37 hours per week would equal to approximately $57,860.[5] The Court therefore finds by a preponderance of evidence that the compensatory damages component of the amount in controversy is at least $57,860. Although on its own, this is insufficient to meet the $75,000 threshold, as discussed next, the Court finds that in conjunction with the other damages at issue in this case, Target has met its burden in showing there is more than $75,000 in controversy.

### B. Target Has Failed to Show Sufficient Non-Economic Damages

Washington seeks emotional distress and related non-economic damages. Compl. ¶ 80, Prayer ¶ A. In its Notice of Removal and its Opposition, Target used damage awards in other cases to attempt to establish that the amount in controversy for emotional distress and related non-economic damages would equal to at least $75,000 on its own.[6] NOR ¶ 21.

Target also pointed to *Hernandez v. Regents of the Univ. of California*, Alameda County Superior Court Case No. RG06272564 (September 25, 2009), where the court awarded $90,000 for emotional distress damages. NOR ¶ 21; Opp'n at 8; *see* ECF No. 33-6 (completed jury verdict form in *Hernandez*). According to Target, there, the plaintiff alleged that the employer failed to

---

[5] At the hearing, counsel for Washington asserted that lost wages should be determined by reference to the total number of hours worked by Washington from August 15, 2021, and August 21, 2021—namely, 7.37 hours, the lowest of total works hours by Washington in any given week during her employment at Target. *See* Shirian Decl., Ex. A. On the other hand, Target asserted that the variance in number of hours worked—and the fact that her hours were less than the full time 36 hours she was allegedly hired for—was a result of Washington's unexcused tardiness and absenteeism. *See also* Second Klarfeld Decl, ¶ 9. Thus, according to Target, the number of hours Washington was hired to work—i.e., 36 hours as reflected by the employment application and hiring profile (adjusted for unpaid lunch breaks) should be utilized. *See* Second Klarfeld Decl, Ex. 1. Target, however, did not submit personnel records reflecting the unexcused absenteeism and tardiness, and provides scant support for this in the Klarfeld declarations, as Klarfeld does not state either that he reviewed Washington's entire personnel file or even the reasons for her termination and can therefore attest that she had any unexcused absenteeism or tardiness. Given the discrepancy in the hours per week worked by Washington and in light of the number of hours Washington was hired to work, the Court finds that using the average is reasonable for determining lost wages, particularly since it results in a number that is half of full time. The Court also notes that it does not appear that the allegations in the Complaint are that Washington worked less than full time due to Target's alleged discrimination.

[6] In addition to the cases discussed below, in its Notice of Removal, Target also pointed to "*Steven Wiley, et al. v. Trendwest Resorts, Inc. et al,* Contra Costa County Superior Court Case No. MSC05-01991 (October 18, 2010)." NOR ¶ 21. Washington noted that counsel was unable to access this case. Mot. at 9. Based on the case number referenced, it appears that Target may have intended to point to *Li v. Trendwest Resorts, Inc., et al* Contra Costa County Superior Court Case No. MSC05-01991 (June 23, 2015), and the reference to "*Steven Wiley*" was a clerical error. Target did not point to this case in its Opposition, and therefore the Court need not discuss it beyond noting that Target failed to allege that the case cited was factually similar to the matter at issue, and acknowledged that plaintiff in that case was "demoted and then replaced," which the Court finds is clearly dissimilar to the matter at hand. d

accommodate his disability and discriminated against his due to his disability by terminating his employment. NOR ¶ 21; Opp'n at 8. However, Target once again failed to allege similarities between the matter at issue here and the facts in the cited case, either in its Notice of Removal, or in its Opposition to the Motion to Remand. NOR ¶ 21 (alleging only that "as here, the plaintiff alleged that the employer failed to accommodate his disability and discriminated against his [sic] due to his disability by terminating his employment."); Opp'n. at 8.[7]

In fact, Washington distinguishes *Hernandez v. Regents of the Univ. of California* by pointing to the fact that in *Hernandez*, the plaintiff was in a car accident which necessitated her medical leave for several months, and despite her inability to work, defendant requested plaintiff's return. Mot. at 9. *Id.* In addition to these dissimilarities, *Hernandez* differs from the matter at hand in other ways as well. Significantly, and unlike Washington, the plaintiff had worked for her employer for approximately three years and there had been back and forth interactions between her and her employer regarding necessary accommodations. *See* ECF No. 33-5. Thus, the Court does not find that the simple fact that the other plaintiff was also terminated based upon her disability makes *Hernandez* factually similar enough to Washington's case for these purposes. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *as amended on denial of reh'g and reh'g en banc* (Feb. 13, 2006) (finding that in determining the amount in controversy, the district court properly considered emotional distress damage awards in *similar* age discrimination cases).

Target also relies on *Izaguirre v. International Coffee & Tea*, Los Angeles County Superior Court No. BC486877, 2013 WL 6624243, but does not provide more than a simple statement that "as here, the plaintiff alleged that after she returned to work from protected leave and was terminated." NOR ¶ 21. A review of *Izaguirre v. International Coffee & Tea* reveals that plaintiff,

---

[7] Washington notes that district courts have held that to utilize jury verdicts from other, similar cases as the basis for the amount in controversy in an action removed on diversity grounds, those cases must be "factually identical, or at a minimum, analogous to the case at issue." Mot. at 8 citing *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp.2d 1034, 1055 (C.D. Cal. 2012). However, district court decisions have varied in their findings with respect to the degree of similarity that is required. *See Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1034 (N.D.Cal.2002) (finding that although the case cited was "not perfectly analogous" because on plaintiff suffered persistent discrimination over a ten-year period whereas the other worked at their place of employment for only four months, it did evidence "that emotional distress damages in a successful employment discrimination case may be substantial").

who was employed by defendants for nearly twelve years, was involved in a car accident and fractured her wrist. *See* ECF No. 33-7 (complaint in *Izaguirre*). As a result, plaintiff in *Izaguirre* required a surgery. *See id.* About ten weeks later, upon her return to work, plaintiff's employer informed her that she could not be allowed to work with the restrictions that plaintiff required. *Id.* Shortly thereafter, plaintiff was terminated. *Id.* The facts alleged in *Izaguirre* appear to be different to the instant matter because the length of employment, the nature of the disability, and the necessary accommodations are dissimilar. *See id.*

Target has therefore failed to point to an analogous case with similar facts where the plaintiff obtained $75,000 in emotional distress damages. Target has thus failed to show by a preponderance of evidence that emotional distress damages equal $75,000. Moreover, unlike with the compensatory damages component discussed above, Target has not provided any other basis for the Court to make reasonable assumptions and an ultimate determination as to this component of the amount in controversy.

### C. Target Has Met Its Burden to Show Punitive Damages In a 1:1 Ratio

Washington seeks punitive and exemplary damages against Target. Prayer ¶ C. Although in its Notice of Removal, Target applied a 2:1 ratio to its estimated damages figure of $195,384 to reach $390,768 punitive damages award, in its Opposition, Target points to what district courts in the Ninth Circuit have previously found and applies a more conservative ratio of 1:1 to calculate punitive damages. NOR ¶ 22 ; Opp'n at 9. Applying this ratio and taking into consideration its purported amount in lost wages and emotional distress damages, which are $120,156 and $75,000 respectively, Target concludes that punitive damages would be $195,156. Opp'n at 9. In her Motion, Washington posits that courts are not required to include punitive damages for amount in controversy purposes and that Target only relied on case law that could serve as a guidepost for how a court could calculative punitive damages. Mot. at 10. The Court finds that punitive damages should be included for amount in controversy purposes. *See Gibson v. Chrysler Corp,* 261 F.3d 927, 945 (2001) ("It is well established that punitive damages are part of the amount in controversy in a civil action.") (citing *Bell v. Preferred Life. Assur. Society,* 320 U.S. 238, 240 (1943).

As an initial matter, punitive damages must bear a "reasonable relationship" to compensatory damages. *Swinton v. Potomac Corp.*, 270 F.3d 794, 818 (9th Cir. 2001) (citing *BMW of N. Am. v. Gore*, 517 U.S. 559, 580 (1996)). Furthermore, FEHA itself does not place a statutory limit on the amount of punitive damages. *See* Cal. Gov. Code § 12965 (omitting any ceiling on the amount of punitive damages that may be awarded). It appears that much of the case law scrutinizes much higher ratios than 1:1, so Target's 1:1 ratio appears to be conservative and appropriate. *See Gore*, 517 U.S. at 583 (refusing to draw a mathematical bright line between constitutionally acceptable and unacceptable calculations and finding that when the "ratio is a breathtaking 500 to 1, however, the award must surely raise a suspicious judicial eyebrow") (internal citations omitted); *see also State Farm Mut. Auto. Ins. Co. v. Campell*, 583 U.S. 408, 410 (2003) (declining to impose a bright-line ratio which a punitive damages award cannot exceed and finding that, "in practice, few awards *exceeding* a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process") (emphasis added); *Swinton*, 270 F.3d at 818 (affirming a ratio of 28:1 and finding a low award of compensatory damages may support a higher ratio of punitive damages when defendants conduct involves particularly egregious acts, there are noneconomic harms that are difficult to determine, and defendant has high net worth).

As discussed above, Target has only established that the amount in controversy for lost wages would equal $57,860. *See* Opp'n at 6; *see* Reply at 3. However, applying the 1:1 ratio for punitive damages to that figure yields a result of $115,720, well in excess of the jurisdictional threshold even without taking into account emotional distress damages and before considering attorneys' fees.

### D.  Target Has Met Its Burden to Show That Attorney's Fees Would Exceed $77,000

Washington also seeks reasonable attorney's fees pursuant to Government Code section 12965. Prayer ¶ E. When determining the amount in controversy, attorney's fees may be considered if they are recoverable by the plaintiff by statute or contract.[8] *Fritsch v. Swift Transport. Co. of Arizona*, LLC, 899 F.3d 785, 794 (9th Cir. 2018). As an initial matter, Government Code section

---

[8] The Court therefore finds unavailing Washington's argument that the Court should not consider attorneys' fees, Mot. at 11.

12965 expressly provides that, in a private action enforcing the provisions of FEHA, a court may, in its discretion, award the prevailing party reasonable attorney's fees. *See* Cal. Gov. Code § 12965(c)(6) ("In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees[.]").

Target estimates attorney's fees in the amount of $77,000 by pointing to Washington's counsel's hourly rates and the total number of hours Washington's counsel worked in a similar case where it obtained a default. Opp'n at 10. Target provides "summary-judgment-type" evidence in support. *Id.* To reach the 140 hours figure, Target relies on Washington's counsel of record's prior single-plaintiff disability discrimination and failure to accommodate action, *Mancillas v. Fabfad, LLC, et. al.*, Los Angeles County Superior Court Case No. 19STCV13153. *Id.* In that case, Washington's counsel of record sought "attorney's fees for 140 hours of work performed through just obtaining a default against the defendant." *Id.*. Although *Mancillas* has additional causes of actions, there is significant overlap in the causes of action. ECF 33-2. Furthermore, *Mancillas* was a single-plaintiff disability discrimination case, similar to the instant matter. ECF 33-2.

At the hearing, counsel for Washington, Mr. Shirian, asserted that, in calculating attorney's fees, it was improper for Target to use Mr. Bibiyan's hourly rate, given that Mr. Bibiyan is a partner at the law firm representing Washington and presumably has a hourly rate than Mr. Shirian.[9] In particular, counsel argued that (1) Target failed to show that Mr. Bibiyan worked on the case; (2) Target's counsel personally is aware of how little Mr. Bibiyan has worked on the case given his absence from most substantive communications about the case; and (3) Target did not provide summary-judgment-type evidence as to Mr. Shirian's hourly rate. The Court finds these arguments unavailing.  In the parties' Rule 26f Report, which requires that each party set forth trial counsel,[10] Washington includedMr. Bibiyan. ECF 24 at 8 (listing Mr. Bibiyan, Mr. Klien and Mr. Shirian as Washington's trial counsel).  In addition, he is listed on every one of Washington's filings to this

---

[9] The hourly rate of $550 for Mr. Bibiyan was obtained from the declaration filed by Mr. Bibiyan in support of his request for attorney's fees in *Mancillas* in 2020. *See* ECF 33-3.

[10] The Court's Order Setting Scheduling Conference requires that the Rule 26f Report list "[t]he name(s) of the counsel who will try the case." ECF 16 at 5.

Court. *See* Motion at 16; *see also* Reply at 8. Accordingly, it is reasonable to assume that he is working on the case. Furthermore, Mr. Bibiyan's hourly rate as of August 2023 was listed to be $950, which Target did not use; the $550 rate was therefore a relatively conservative estimate. Opp'n at 10-11; *see* ECF 33-4.

      Finally, the Court agrees that the 140-hour figure is based upon reasonable assumptions given that obtaining default—where, by definition, the matter is nearly uncontested—would entail many fewer hours than a contested matter such as the instant case. Accordingly, the Court finds that Target has shown, by a preponderance of evidence, that attorneys' fees alone would equal at least $77,000—above the jurisdictional threshold.

### III. Target Has Shown that the Jurisdictional Threshold is Met

The Court finds that Target has met its burden to show that the amount in controversy is above the jurisdictional threshold, and therefore this Court does have subject matter jurisdiction pursuant to diversity.[11]

/ / /

/ / /

/ / /

---

[11] Counsel for Washington suggested that in calculating lost wages, the Court utilize the lowest number of hours worked in any given week during Washington's employment with Target, i.e., 7.37 hours. Counsel for Washington also asserted that the Court should not take judicial notice of the exhibits filed by Target for the purposes of determining attorney's fees. Even if the Court found this to be the reasonable approach, the amount in controversy would still meet the jurisdictional threshold. At 7.37 hours a week at the rate of $20.95 per hour for 159 weeks, compensatory damages would equal approximately $24,550. Applying the punitive damages ratio of 1:1, compensatory and punitive damages together would equal $49,100. Using what the parties seem to agree is the District Court's routine estimate of attorney's fees at $30,000, based on an hourly rate of at least $300 and an estimated 100 hours spent, the amount in controversy would total $79,100. *See* Opp'n at 11.

## **CONCLUSION**

For the foregoing reasons, the Court ORDERS as follows:

1. Target's Request for Judicial Notice is GRANTED; and

2. Washington's Motion for Order Remanding Action to State Court is DENIED. This case shall remain under the jurisdiction of the Central District of California.

IT IS SO ORDERED.

Dated: November 9, 2023

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge